# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARRON FELIX, | Case No.: 1:16-cv-01632-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiff William Barron Felix ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff previously was found not disabled and capable of performing past relevant work in October 2010 based on prior applications for a period of disability, disability insurance benefits, and supplemental security income. AR 15. In April 2013, after previously being denied in 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income. AR 180-86, 195-205, 213, 215, 217.[2] Plaintiff alleged that he became disabled due sciatica, high blood pressure, and back problems. AR 223. Plaintiff's applications were denied initially and on reconsideration. AR 115-18, 122-26. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Andrew Verne held a hearing on May 21, 2015, and issued an order denying benefits on July 28, 2015. AR 12-26, 32-75. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 10. This appeal followed.

### Hearing Testimony

The ALJ, appearing by video from Moreno Valley, held a hearing on May 21, 2015, in Fresno, California. Plaintiff appeared with his attorney John Molitoris. Impartial Vocational Expert ("VE") Judith Najarian also appeared. AR 34.

In response to questioning from the ALJ, Plaintiff testified that he was collecting foods stamps and unemployment. He had been collecting unemployment for about three months following seasonal work as a forklift driver. Plaintiff currently was looking for jobs, and he had applied for several warehouse and forklift jobs. AR 37-39. Prior to his seasonal job, Plaintiff had not worked since 2008 because he fell off of a house and hurt himself. Plaintiff fell off of a two-story house and landed on his feet. He had left his keys inside and was trying to get in through an upstairs window in 2008. Plaintiff testified that he had surgery on his foot, which took some of the pain away. He worked at the

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

seasonal job from July 2013 to October 2013, and he also worked for Walmart prior to July 2013 as a janitor, but he could not stand on his feet all day because of pain. The forklift job was better, but still hurt his back, sciatica and feet. AR 40-42, 44-45.

When asked why he could not work, Plaintiff testified that he cannot sit or stand for very long. He can stand about 20 or 30 minutes at a time and sit about an hour at a time. The rest of the time he is lying down on the couch. AR 42-43. He has pain when he stands and walks, and takes NSAIDS, which cause him dry mouth, constipation, stomach pain and nerve pain. AR 42-43. He also has burning in his feet that feels like "walking on eggshells." AR 44. He has told his doctor about his sciatica, but they are still working on it. No doctor has told him that he cannot work and he has not asked. AR 49. Plaintiff has not been hospitalized for any of the conditions he is alleging prevent him from work, but he did black out, fall off his chair and break his nose a month prior to the hearing and went to the hospital. He did it twice in one week. AR 50.

When asked about his right ankle, Plaintiff testified that he has received x-rays on both ankles and has chronic arthritis. His left ankle is worse, but his right ankle hurts because he puts weight on it to accommodate his left ankle. AR 51. When asked about a typical day, Plaintiff testified that he can take care of himself, shower, and put on clothes. He does not do any chores and does not go grocery shopping. AR 51-52.

In response to questions from his attorney, Plaintiff testified that he uses a cane all the time. His doctor told him to use it and helps take the weight off of his foot. He can stand for thirty minutes at a time with the cane. When asked about his left foot surgery, Plaintiff reported that his bone healed, but his foot still hurts when he walks. The doctor told him to use a brace until he could no longer stand the pain and then he would either have to fuse it or live with the pain. Plaintiff testified that he wears the brace on his left foot pretty much every day. He also received cortisone injections in his left foot, but the injections only temporarily relieved the pain. No fusion surgery has been scheduled, and he does not want it. Plaintiff also testified that he had shoulder surgery because of ripped tendons. He has had improvement in the shoulder, but it still hurts when he raises his arms. He can lift to shoulder height with his right arm. He also does not have very good range of motion. These impairments have been worsening since his alleged onset date. AR 53-57.

When asked about his seasonal work in 2013 and 2014, Plaintiff testified that he would have worked longer if they offered him work. He did not miss any days while working, but he took extra breaks before lunch because he would feel dizzy and need to eat. He did not report it because he did not want to get fired. He would take an extra half hour every day. He also took pain medication while working, but would not tell anybody because they would not have let him work. AR 57-59.

Plaintiff further testified that he remembered being examined by the Social Security doctor in 2013. When asked if he told the doctor that he could climb stairs with railings, Plaintiff denied that he could climb stairs, and had not climbed stairs since he worked in 2000 to 2010. Plaintiff indicated that he did not agree with the doctor's statements regarding his abilities. Plaintiff explained that he cannot bend or stoop, he cannot stand or sit and he can lift 10 pounds for about 20 minutes before he will start hurting. He hurts in his lower back and feet and his shoulders hurt when he lift and carries. AR 60-63.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Judith Najarian. AR 63. The VE identified Plaintiff's past work as janitor, industrial truck operator (forklift), tractor-trailer truck driver, and supervisor, filling and packing. AR 64-65. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual that could lift and/or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk six hours in an eight-hour workday with normal breaks, and postural activities could be performed frequent with frequent over shoulder reaching bilaterally. The VE testified that this individual could perform Plaintiff's past relevant work as a truck driver, industrial truck driver, janitor and supervisor. The individual also could perform other work, such as stubber, dining room attendant and packager, machine. AR 66-67.

For the next hypothetical, the ALJ asked the VE to add that the individual would have to alternate between sitting and standing. The VE testified that this would eliminate Plaintiff's past work as generally performed, but not his work as a forklift driver as he performed it. It would eliminate all jobs at the medium level, but some examples of light work would be a reduced portion of cashier II, storage facility rental clerk, and information clerk. AR 67-69.

For the next hypothetical, the ALJ asked the VE to change the limitation in the first hypothetical to occasional overhead, over the shoulder reaching bilaterally. The VE testified that this would not change the truck driver or forklift positions. AR 69. However, if the ALJ changed the postural activities to occasional, then the tractor-trailer and janitor would be eliminated, but the supervisor and industrial truck only had occasional posturals and the machine packager jobs would be reduced by two-thirds, but there would still be jobs. AR 69-70.

Following the ALJ's questioning, Plaintiff's counsel asked the VE to assume an individual with the same age, education and work experience as Plaintiff at a medium exertion and add a limitation of being off-task for up to one hour a day. The VE testified that this would turn an eight-hour day into a seven-hour day and that there would be no work at any exertional level. Within the jobs discussed, the VE testified that there would be a tolerance of missing 10 to 12 days a year or approximately one day a month. AR 70-73.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-26. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since October 28, 2010, his alleged onset date. AR 18. Further, the ALJ identified degenerative disc disease, obesity, and right shoulder impingement syndrome, status post arthroscopy subacrominal decompression as severe impairments. AR 18-19. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 19-20. Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except that he had the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently, can stand and/or walk 6 hours in an 8-hour workday with normal breaks, can perform all postural activities frequently and is capable of frequent over the shoulder reaching bilaterally. AR 20-24. With this RFC, the ALJ found that Plaintiff could perform his past relevant

work as a janitor, industrial truck operator, truck driver, and supervisor filling and packing. AR 24-26. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Given the prior adjudication, there is a rebuttable presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); Acquiescence Ruling 97-4(9), 1997 WL 742758; *see also Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (ALJ's prior finding that claimant is not disabled creates rebuttable presumption that claimant "continued to be able to work after that date"). The claimant may rebut this presumption by showing "changed circumstances," such as an increase in the severity of the claimant's impairment, a change in age category or the existence of an impairment not considered in the previous application. *Lester*, 81 F.3d at 827. Here, the ALJ found that there had been a showing of changed circumstance material to the determination of disability and that the presumption of continuing non-disability had been rebutted. AR 16, 23.

## **DISCUSSION**[3]

Plaintiff argues that the ALJ erred by finding that Plaintiff's foot and left shoulder impairments did not meet the *de minimis* step two standard. Plaintiff also argues that the ALJ erred in his credibility determination because he neglected to consider Plaintiff's attempts to work. (Doc. No. 15 at p. 6.)

### I. Step Two Findings

As indicated, Plaintiff contends that the ALJ erred by not finding his bilateral foot problems and left shoulder limitations to be severe at step two of the sequential evaluation. Plaintiff further contends that this error is not harmless because the ALJ improperly excluded these limitations from the RFC.

At step two of the five-step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Once those impairments have been ascertained, the ALJ must interpret the functional limitations imposed by the impairments into an RFC assessment. 20 C.F.R. §§ 404.1520(e), 416.945; *Palomares v. Astrue*, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012). The RFC is then used to pose hypothetical

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

questions to a vocational expert to determine whether the Plaintiff can perform work that exists in significant numbers in the national economy or past relevant work. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

A failure to include an impairment in the analysis at step two is only harmful error if the ALJ fails to consider the functional limitations that flow from that impairment at later steps in the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."). In creating the RFC, an ALJ need only consider limitations that are supported by objective evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Here, the ALJ found that Plaintiff's degenerative disc disease, obesity and right shoulder impingement syndrome status post arthroscopy subcrominal decompression were severe impairments, but did not find that Plaintiff's foot pain or left shoulder impairments caused more than a minimal limitation on his ability to perform basic work activities. AR 19. The ALJ expressly considered Plaintiff's bilateral foot pain at step two, but appropriately reasoned that it was not severe based on relatively normal findings and improved symptoms. AR 19. *Fry v. Comm'r of Soc. Sec.*, No. 2:15-cv-2023-KJN (PS), 2017 WL 999459, at *3 (E.D. Cal. Mar. 15, 2017) (ALJ properly found plaintiff's plantar fasciitis non-severe where plaintiff acknowledged that condition improved when he used orthotic inserts, and x-rays of plaintiff's feet revealed no abnormalities); *Verduzco v. Comm'r of Soc. Sec.*, 2013 WL 4854420, at *12 (E.D. Cal. Sept. 10, 2013) (ALJ properly found claimant's examinations were unremarkable and did not support a severe condition); *see also Stoffan v. Berryhill*, No. 1:16-CV-01654-SKO, 2018 WL 1335392, at *10 (E.D. Cal. Mar. 15, 2018) (non-severity determination at step two supported by objective evidence in the record); *Braeger v. Astrue*,

No. 1:11-cv-01931-JLT, 2012 WL 4985103, at * 8 (E.D. Cal. Oct. 17, 2012) (citing objective medical evidence in the record as supporting ALJ's finding of non-severity). As discussed by the ALJ, Plaintiff was referred to a podiatrist in 2014 for complaints of foot pain, but was not taking any medications. AR 19, 351. X-rays taken of the right foot and left foot in April 2014 were normal. AR 355, 357. Additionally, treatment records demonstrated relatively normal findings such as no focal deficits, gait within normal limits, and no deformities or edema in the extremities and improved symptoms. AR 22; *see also* AR 432 (no swelling, erythema, or focal tenderness, full range of motion with pain in right foot; gait within normal limits), 436 (left foot no swelling, ecchymosis, no focal tenderness, full range of motion, gait within normal limits), 439 (gait within normal limits), 441 (right foot non-tender, full range of motion, left foot tender with full range of motion with pain, gait within normal limits), 445 (no focal tenderness in foot), 449 (feet no lesions or swelling, no focal tenderness). As noted by the ALJ, Plaintiff also testified that his foot surgery took some of the pain away. AR 19, 45.

With respect to Plaintiff's left shoulder, Plaintiff did not allege disability based on his left shoulder nor did he testify that any such impairment prevented him from working. AR 42, 49, 51, 56-57, 62, 63, 115, 122, 223. Moreover, the only records Plaintiff cites related to this condition are from November 2014 (AR 453) and December 2014 (AR 456, 457, 477). (ECF No. 15 at pp 9-10). Plaintiff bears the burden of proving he is disabled and must produce complete and detailed objective medial reports from licensed physicians. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) ("claimant bears the burden of proving she is disabled" and "must produce complete and detailed objective medical reports of her condition from licensed medical professionals"). As the Commissioner points out, Plaintiff's limited records do not establish that left shoulder pain significantly limited his ability to perform basic work activities for at least a 12-month consecutive period. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii).

Even if the ALJ erred by failing to find Plaintiff's bilateral foot pain and left shoulder impingement severe at step two, any such error is harmless because the ALJ considered and discussed Plaintiff's impairments at step four of the sequential evaluation. *Lewis*, 498 F.3d at 911. For instance, at step four, the ALJ expressly considered the opinion of the consultative examiner, Dr. Roger Wagner, and afforded it "significant weight." AR 23. In relevant part, Dr. Wagner evaluated Plaintiff

on June 23, 2013. Plaintiff was easily able to walk without assistance and without a noticeable limp. He did not use an assistive device. On examination, he was able to walk on toes and heels with some ankle pain primarily on the left, and had a normal gait. His ankles were essentially normal with no swelling, redness, heat or effusions, and his strength was 5/5 bilaterally in the upper and lower extremities. Dr. Wagner opined that Plaintiff was able to stand walk up to six hours, had no sitting limitations with normal breaks, he could lift and carry 50 pounds occasionally and 25 pounds frequently, he could perform postural activities frequently, he could reach over shoulder no more than frequently due to discomfort and he had no environmental limitations. AR 315-19. Dr. Wagner's opinion constitutes substantial evidence supporting the ALJ's RFC findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion alone constitutes substantial evidence because it rests on his own independent examination of the claimant).

Critically, Plaintiff concedes that he was not disabled at least through the date of Dr. Wagner's opinion in June 2013 (and for some reasonable period of time after), but argues that his condition deteriorated after that time. (ECF No. 15 at pp. 11, 12.) Plaintiff's argument is unpersuasive. The ALJ expressly considered whether Plaintiff's condition had deteriorated after Dr. Wagner's opinion, but noted that Plaintiff was able to return to work in the time period after Dr. Wagner's assessment. AR 23. Indeed, Plaintiff admits that he stopped working in October 2013, not because of his disability, but because he was laid off, and that he also continued to look for jobs. AR 21, 39, 41. An ALJ may consider work that a claimant engaged in—whether or not that work amount to substantial gainful activity—in making a disability determination. *See* 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ properly considered evidence that claimant recently worked as a personal caregiver for two years, and sought out other employment since then); *Archuleta v. Colvin*, No. CV 12–04486–MAN, 2013 WL 6002096, at *9 (C.D. Cal. Nov. 8, 2013) ("[P]laintiff's ability to work after the alleged onset date [gave] rise to a reasonable inference that plaintiff's subjective pain [was] not as restrictive as she allege[d] it to be.").

///

## II. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's excellent work history in the credibility evaluation. (ECF No. 15 at pp. 14-17 and n. 6.) The Commissioner counters that Plaintiff's argument "otherwise ignores the credibility factors the ALJ did consider, including that his recent work activity undermined his disability claim." (ECF No. 16 at p. 11.)

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.[4]

Here, the ALJ found that Plaintiff satisfied the first step of the analysis and made no finding of malingering. At the second step of the analysis, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . . " AR 22. Therefore, the ALJ's reasons for discounting the alleged severity of Plaintiff's symptoms must be specific, clear and convincing. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015).

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony regarding the limiting effects of his symptoms. First, the ALJ discounted Plaintiff's allegations concerning the limiting effects of his symptoms because they were "inconsistent with the objective medical [record]." AR 21, 22, 23. While lack of medical evidence cannot form the sole basis for discounting a claimant's testimony, it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

---

[4] At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186, was in effect and explained the factors to be considered in assessing credibility. The Court acknowledges that SSR 96-7p was superseded on March 28, 2016, by SSR16-3p. SSR 16-3p was republished on October 25, 2017, 2017 WL 5180304., and makes clear that the ALJ will apply SSR 16-3p only when making decisions on or after March 28, 2016, and federal courts will review an ALJ's decision using the rules that were in effect at the time the decision issued. *Id.* at 5180304, n. 27. The decision in this case was rendered prior to March 28, 2016, before SSR 16-3p became effective, and thus the Court will not apply SSR 16-3p in this matter.

Second, the ALJ also cited inconsistencies between Plaintiff's allegations and his conduct. AR 21. An ALJ properly may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). For instance, the ALJ noted Plaintiff's allegation that he uses a cane at all times as prescribed his physician, but he did not require an assistive device at his consultative examination. AR 21, 316, 318. Indeed, Dr. Wagner found that Plaintiff walked unassisted with a "normal" gait and did not require an assistive device. AR 316, 318. The ALJ also considered that both Plaintiff and his friend failed to indicate that Plaintiff required a cane in their function reports. AR 21, 251, 263.

Third, the ALJ considered Plaintiff's activities of daily living in discounting his allegations of disabling symptoms. AR 21. An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (the nature of daily activities may be considered when evaluating credibility). While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, however, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1112–13. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* Here, the ALJ appropriately considered that Plaintiff's activities, which included cooking, cleaning and shopping, performing activities of daily living without assistance, walking for exercise and driving without restrictions, contrasted with a person severely disabled and unable to obtain and/or maintain employment. AR 21, 37, 52, 316.

Finally, the ALJ also considered that Plaintiff engaged in work activity after his alleged onset date, stopped working because of a business-related layoff and thereafter continued to seek employment. AR 21, 23. An ALJ may properly consider a claimant's ability to work after his alleged onset date in assessing credibility. *Bray*, 554 F.3d at 1227; *Baker v. Berryhill*, No. 16-CV-05611-MEJ, 2017 WL 3782156, at *12 (N.D. Cal. Aug. 31, 2017) ("The fact a claimant worked after the alleged date of onset is evidence the claimant was not totally disabled."); *Rast-Burton v. Berryhill*, No. EDCV 16-1808 FFM, 2017 WL 5157437, at *7 (C.D. Cal. Nov. 6, 2017) ("Although plaintiff's work

after the alleged onset date did not rise to the level of significant gainful activity, her conduct can still be considered in the ALJ's credibility analysis."); *Archuleta*, 2013 WL 6002096, at *9.

Accordingly, the Court finds that the ALJ did not err in his assessment of Plaintiff's subjective complaints.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff William Barron Felix.

IT IS SO ORDERED.

Dated: **March 26, 2018**          /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE